**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., Individually and on behalf of a Class of Similarly Situated Individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>ADVANCED DATA SYSTEMS INTERNATIONAL, LLC and ADVANCED DATA SYSTEMS CORP OF DELAWARE,<br><br>*Defendants*. | Civil Action No. 16-3620 (JMV) (JBC)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this this putative class action, named Plaintiff alleges that Defendants sent it multiple unsolicited fax advertisements in violation of statutes prohibiting junk faxes. Presently before the Court is a motion to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Advanced Data Systems International, LLC and Advanced Data Systems Corp. of Delaware (D.E. 82). Plaintiff filed a brief in opposition (D.E. 87), to which Defendants replied (D.E. 89).[1] The Court reviewed the parties' submissions and decided the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).

---

[1] Plaintiff's Second Amended Complaint (D.E. 65) will be referred to as "SAC"; Defendants' brief in support of their motion to dismiss (D.E. 82-1) will be referred to as "Def. Brf."; Plaintiff's opposition (D.E. 87) will be referred to as "Plf. Opp."; and Defendant's reply of its motion (D.E. 89) will be referred to as "Def. Reply."

For the reasons set forth below, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

### I. FACTUAL BACKGROUND[2] & PROCEDURAL HISTORY

Plaintiff Physicians Healthsource, Inc. is an Ohio corporation. SAC ¶ 9, D.E. 65. Defendant Advanced Data Systems International, LLC is a Delaware limited liability company with a principal place of business in Paramus, New Jersey. *Id.* ¶ 10. Defendant Advanced Data Systems Corp. of Delaware is a Delaware corporation. *Id.* ¶ 11.

Over the course of several days in March and April of 2013, Defendants sent eight unsolicited faxes to Plaintiff's telephone facsimile ("fax") machine. *Id.* ¶ 12. Plaintiff had not given the Defendants permission to send the faxes, nor is there a method for Plaintiff to avoid receiving them. *Id.* ¶¶ 14, 16. Plaintiff seeks to represent a class of persons who also received these unsolicited faxes. *Id.* ¶ 19.

On June 21, 2016, Plaintiff filed its Complaint. D.E. 1. Plaintiff then filed a First Amended Complaint on October 7, 2016, followed by a Second Amended Complaint ("SAC") on June 19, 2019. D.E. 16, 65. The SAC asserts the following counts: Count 1 – violation of the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227; Count 2 – violation of the New Jersey Junk Fax Statute, N.J.S. 56:8-157 *et seq.*; and Count 3 – violation of the New Jersey Consumer Fraud Act, N.J.S. 56:8-1 *et seq.* D.E. 65.

Defendants' present motion to dismiss was filed on October 9, 2019. D.E. 82. Defendants seek a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[2] The factual background is taken from the Second Amended Complaint. D.E. 65. When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in a complaint. *Fowler*

2

## II. STANDARD OF REVIEW

In deciding a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed.[3] A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). For a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Id.* at 178. The burden is on the Plaintiff to prove the Court has jurisdiction. *Id.*

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss when a complaint fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789

---

*v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997)). As a result, the Court considers the faxes that were attached to the pleading.

[3] This Court also has an independent obligation to establish that it has subject-matter jurisdiction. *Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998) ("[A federal] court . . . will raise lack of subject-matter jurisdiction on its own motion.") (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

(3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III. ANALYSIS

#### 1. Count One - Junk Fax Prevention Act of 2005

Count One asserts a violation of the Telephone Consumer Protection Act ("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("JFPA"), which makes it unlawful to "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement. 47 U.S.C. § 227(b)(1)(C). [4] It further allows for a private right of action by a recipient of an unsolicited fax advertisement against the sender. 47 U.S.C. § 227(b)(3). Under the TCPA, an unsolicited advertisement is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a)(5). Plaintiff alleges that Defendants violated the TCPA when they faxed eight unsolicited advertisements between March 7, 2013 and April 22, 2013.

---

[4] The JFPA was a limited amendment to the TCPA's prohibition against unsolicited fax advertisements. The purpose was to establish an exemption for senders having an established business relationship with the recipient and to clarify the ability of the recipient to "opt-out." *See* S. Rep. 109-76 (June 7, 2005). It did not alter the primary purpose of the TCPA.

Defendants move to dismiss Count One based on both a lack of standing and because the alleged faxes do not qualify as advertisements as defined by the TCPA.

### A. Standing

#### a. *Article III Standing*

A party must have standing for a court to have subject matter jurisdiction. The Constitution provides that "judicial Power" extends to "Cases" and "Controversies[.]" U.S. Const. art. III, § 2. To meet the case-or-controversy requirement, a plaintiff must show that she has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted). To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 358–59 (3d Cir. 2015) (internal quotation marks omitted and punctuation modified)). An injury-in-fact requires a plaintiff to show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A particularized injury means that it "must affect the plaintiff in a personal and individual way." *Id.* at 560 n. 1. A concrete injury refers to one that actually exists; one that is real and not abstract. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citations omitted). In addition, "'[t]he injury must be concrete in both a qualitative and temporal sense[.]'" *Kamal v. J. Crew. Grp., Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Defendants argue that Plaintiff lacks standing to bring suit because Plaintiff alleges only "a bare procedural violation of a statute" and fails to sufficiently allege the requisite concrete injury. (Def. Brf. at 4).

In *Spokeo*, the Supreme Court considered Article III standing under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. 136 S. Ct. at 1544. Robins, a consumer, filed a class-action lawsuit against Spokeo asserting that Spokeo was a reporting agency under the FCRA and had reported incorrect information as to Robins. *Id.* at 1545-46. The district court dismissed, finding that Robins had not sufficiently pled an injury-in-fact. *Id.* at 1546. The Ninth Circuit reversed, determining that Robins adequately asserted a particularized injury because Robins alleged that his, rather than another's, statutory rights were violated. *Id.* The Supreme Court then reversed because the Ninth Circuit only considered the "particularized" prong but failed to consider the "concrete" requirement. *Id.* at 1545. The Supreme Court remanded for the Ninth Circuit to consider, in the first instance, the concreteness inquiry. *Id.*

The *Spokeo* Court recognized that a concrete injury could encompass both tangible and intangible harm. *Id.* at 1549 (citations omitted). The Supreme Court then set forth the proper analysis when addressing an intangible injury:

> In determining whether an intangible harm constitutes injury in fact, *both history and the judgment of Congress play important roles.* Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in *historical practice*, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 775–777, (2000). In addition, because *Congress is well positioned* to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, we said in *Lujan* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." 504 U.S. at 578. Similarly, Justice Kennedy's concurrence in that case explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* at 580 (opinion concurring in part and concurring in judgment).

6

136 S. Ct. at 1549 (emphases added).  Yet, the Supreme Court cautioned, a plaintiff does not automatically satisfy the injury-in-fact requirement solely because Congress granted the plaintiff a statutory right along with authorization to bring suit.  *Id.*  The Court in *Spokeo* explained that a plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Id.*  (citation omitted).  By way of example, the *Spokeo* Court observed, it would be difficult to imagine how Robins would have suffered a concrete harm if Spokeo had merely disseminated an incorrect zip code.  *Id.* at 1550.

Nevertheless, the Supreme Court also recognized that the "risk of real harm" could satisfy the concreteness prong.  *Id.* at 1550 (citation omitted).  The Court continued that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury-in-fact.  In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."  *Id.* (emphasis in original) (citing *Fed. Election Comm'n v. Akins,* 524 U.S. 11, 20–25 (1998)).

The Third Circuit has, on several occasions, addressed standing challenges since *Spokeo*.  *See, e.g.*, *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279 (3d Cir. 2019) (finding that a plaintiff in FDCPA case had standing to sue); *Kamal v. J. Crew Group, Inc.*, 918 F.3d 102, 106 (3d Cir. 2019) (ruling that a plaintiff lacked standing in an action brought under the Fair and Accurate Credit Transactions Act); *Long v. Se Pa. Transp. Auth.*, 903 F.3d 312, 325 (3d Cir. 2018) (holding that the plaintiff lacked standing to maintain an action under the FCRA); *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 357-58 (3d Cir. 2018) (concluding that, in an FDCPA class action, the lead plaintiff had standing); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017) (holding that the plaintiff had standing in matter alleging a violation of the

TCPA); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, (3d Cir. 2017) (finding that the plaintiff had standing in FCRA case).

Following the dictates of *Spokeo* as to intangible harm, the Third Circuit has conducted both a congressional and historical inquiry in deciding the standing issue. *See, e.g.*, *Kamal*, 918 F.3d at 110-13. For example, in *DiNaples*, the plaintiff received a debt collection letter in an envelope with a "quick response" or "QR" code; a smartphone application could scan the code and reveal the defendant's internal reference number for the plaintiff's account. 834 F.3d at 278. The Circuit previously determined in *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014), that a debt collector violated the FDCPA when it sent a collection letter in an envelope that displayed the debt collector's internal account number for the debtor. In *St. Pierre*, which followed *Spokeo*, the Circuit ruled that a plaintiff asserting an FDCPA action under *Douglass* had standing to sue. 898 F.3d at 357-58.

The *DiNaples* court indicated that because the plaintiff was asserting an intangible harm, *Spokeo* required the Circuit to consider both an historical perspective and Congress' judgment. *Id.* at 279 (citing *Spokeo*, 136 S. Ct. at 1549). In considering both the Congressional and historical inquiries, the Court in *DiNaples* pointed to invasion of privacy, a harm that was traditionally recognized as providing as basis for recovery in both English and American courts. *Id.* at 279-80 (citing *St. Pierre*, 898 F.3d at 358). The Third Circuit rejected the defendant's argument that the plaintiff had to show that someone had (or imminently might do so) intercepted the mail, scanned the QR code, read the plaintiff's account information, and determined that the envelope's contents concerned debt collection. *Id.* at 280. The *DiNaples* court explained that the disclosure of the account number itself was the harm that implicated core privacy concerns. *Id.* As a result, the

8

Circuit concluded, the plaintiff sufficiently alleged a concrete injury and therefore had standing to sue. *Id.*

The Third Circuit has also considered whether an alleged violation of the TCPA could give rise to a concrete, although intangible, harm. *Susinno*, 862 F. 3d 346. The plaintiff in *Susinno* received a single telemarketing call to her cell phone, which went to voicemail. *Id.* at 348. The *Susinno* court observed that "[w]hen one sues under a statute alleging 'the very injury [the statute] is intended to prevent,' and the injury 'has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts,' a concrete injury has been pleaded." *Id.* at 351 (quoting *In re Horizon Healthcare Services Inc. Data Breach* Litigation, 846 F. 3d 625 (3d Cir. 2017)). The Third Circuit then found that the harm was exactly the kind Congress intended the TCPA to prevent. *See id.* at 351 ("We therefore agree with [the plaintiff] that in asserting 'nuisance and invasion of privacy' resulting from a single prerecorded telephone call, her complaint asserts 'the very harm that Congress sought to prevent,' arising from prototypical conduct proscribed by the TCPA."). Then the *Susinno* court engaged in historical inquiry and determined that "when Congress found that unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients, it sought to protect the same interests implicated in the traditional common law cause of action [of intrusion upon seclusion.]" *Id.* at 352 (internal quotation and citation omitted). As a result, the Third Circuit held that the plaintiff had sufficiently alleged "a concrete, albeit intangible harm" that satisfied the standing requirements. *Id.*

Defendants argue that the purpose of the fax component of the TCPA as amended by the JFPA is different from the overall purpose of the TCPA. In their view, the JFPA sought only to limit (1) the costs incurred by the recipient whose paper and ink are wasted and (2) the occupation

9

of the fax machine by the advertiser, which renders it unavailable to receive legitimate business messages. (Def. Brf. at 6). Defendants are no doubt correct that these are reasons faxes were included in the TCPA and JFPA. *See* H.R. REP. No. 102-317, at 10 (1991). But the Court does not agree that these are the *only* reasons. Unsolicited faxes were included in the TCPA because they, like unsolicited telemarketing calls, are a nuisance and an unwanted intrusion. *See Van Patten v. Vertical Fitness Group, LLC*, 847 F. 3d 1037 (9th Cir. 2017) ("[Through the TCPA,] Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements." (citing Pub. L. 102-243, § 2, ¶ 12)).[5]

Plaintiff need not have alleged the tangible harms that were among the reasons faxes were included in the TCPA.[6] The allegation that it received the faxes, and their attendant nuisance and invasion of privacy, is sufficiently concrete. (*See* SAC ¶ 3). This is not, as Defendants argue, a bare procedural violation. Defendants did not violate a procedure designed to prevent the

---

[5] In their reply brief, Defendants direct the Court to a recent Eleventh Circuit case which found the *Van Patten* court's reasoning unpersuasive regarding the judgment of Congress. However, the Eleventh Circuit was analyzing the judgment of Congress as to unsolicited text messages, not unsolicited faxes. Text messages, unlike faxes, were not expressly included in the TCPA. The Eleventh Circuit took issue with the *Van Patten* court's generalization that unsolicited contact in itself was the harm contemplated by Congress. *See Salcedo v. Hanna*, 936 F. 3d 1162, 1168-1170 (11th Cir. 2019). Because Congress had not weighed in on text messages, the court was reticent to assume Congress had adjudged unsolicited text messages harmful. Here, in contrast, Congress expressly found unsolicited faxes harmful. Moreover, the Eleventh Circuit still assumed that the appropriately analogous traditional common-law harm was intrusion upon seclusion, even if it did not find that a single text message was similar enough to that tort to be actionable. *Id.* at 1170-1172.

[6] In any event, Plaintiff has allegedly suffered these more tangible harms. *See* SAC ¶ 3 ("A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.").

10

statutorily invented injury, they caused the very injury the statute was designed to prevent—the invasive nuisance of an unsolicited fax. Engaging in the two-prong inquiry articulated by the Third Circuit in *Horizon* and *Susinno*, receiving unsolicited fax messages is (1) exactly the harm that Congress contemplated in enacting the TCPA and (2) is, like an unsolicited telephone call, closely related to the traditional common law causes of action of nuisance and intrusion upon seclusion. The intangible harm caused by receipt of an unsolicited fax advertisement is therefore a sufficiently concrete injury that gives rise to Article III standing.

### b. *Other Arguments against Standing*

Defendants make a number of other arguments that Plaintiff lacks standing.[7] First, they argue that "the Complaint contains zero facts to establish that the document which started this lawsuit was even received by Physicians Healthsource via fax because the document does not contain a fax header at the top of the document or contain any information from which the Court could infer that it was received on a fax machine." (Def. Brf. at 10). Defendants, however, offer no authority requiring a "fax header" to be alleged. Of course, Defendants are free to explore during discovery whether Plaintiff actually received the relevant documents by way of fax.

Defendants next argue that most faxes are now received through a computer server which allows the recipient to view the message and choose whether or not to print it. Since the recipient has agency, the argument goes, then any harm caused is actually self-inflicted. Whether or not this is an accurate description of modern fax servers, it is pure speculation at this stage to assume that is the manner in which Plaintiff received the relevant faxes here. Again, if discovery bears out Defendants theory, Defendants are free to make any motion they deem appropriate.

---

[7] Some of the arguments appear more properly categorized as an attack on the sufficiency of the pleadings. However, because the parties address them vis-à-vis standing, the Court does as well.

11

Defendants also allege that Physicians Healthsource is an entity that has teamed up with a law firm in order to seek out and file TCPA claims. In support, Defendants rely on *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016) for the proposition that a plaintiff which seeks out TCPA claims has not suffered an injury-in-fact. In *Stoops*, the plaintiff alleged a TCPA violation after receiving an automated telemarketing call from the defendant. *Stoops*, however, was decided at the summary judgment stage. In that case, the plaintiff admitted during her deposition that she purposely bought a large number of cell phones in order to receive telemarketing calls and then file TCPA claims. *Id.* at 798-799. The court in *Stoops* concluded that plaintiff's privacy was not invaded since she affirmatively sought out the calls, and therefore could not claim that she suffered the injury contemplated by the statute—invasion of privacy. *Id.* at 800. Again, if after discovery, Defendants believe that they have sufficient evidence to make a similar allegation, Defendants can make the appropriate motion. *Cf. Robert W. Mauthe, M.D., P.C. v. MCMC LLC*, 387 F. Supp. 3d 551, 564 (E.D. Pa. 2019) ("Although [the plaintiff] has filed other TCPA lawsuits, there is no evidence in the record to suggest that he seeks out unsolicited communications the way the *Stoops* plaintiff did.").

Defendants' additional arguments as to prudential standing (Def. Brf. at 13-16) are similarly unavailing. "In addition to the Article III standing requirements, federal courts have developed prudential standing considerations 'that are part of judicial self-government.'" *UPS Worldwide Forwarding, Inc. v. U.S. Postal Service*, 66 F. 3d 621, 626 (3d Cir. 1995) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Defendants argue that Plaintiff has failed to meet one of the requirements for prudential standing, which is that " a litigant demonstrate that her interests are arguably within the 'zone of interests' intended to be protected by the statute, rule or constitutional provision on which the claim is based." *Id.* (quoting *Wheeler v. Travelers*

12

*Ins. Co.*, 22 F. 3d 534, 538 (3d Cir. 1994). This "zone of interest" test "has focused its inquiry on the Congressional intent of the statute and whether the complainant's interests 'were among the sorts of interests those statutes were specifically designed to protect.'" *Chem Service, Inc. v. Environmental Monitoring Systems Laboratory-Cincinnati*, 12 F. 3d 1256, 1262 (3d Cir. 1993) (quoting *National Wildlife Federation*, 497 U.S. 871, 886 (1990)). Defendants argue that Plaintiff's "entrepreneurial interests" fall outside the zone of interest. (Def. Brf. at 14). Once again, following discovery, if Defendants still believe this argument has merit, they can make the appropriate motions.

The motion to dismiss Count One on standing grounds is denied.

**B.  Whether the Alleged Faxes were Advertisements**

Defendants also argue that, even if Plaintiff did have standing to sue, its TCPA claims are insufficient. They assert that (1) the alleged faxes did not constitute prohibited "advertisements" and (2) one of the alleged faxes was not transmitted via fax.

The Third Circuit has recently addressed the kinds of faxes which are prohibited by the TCPA in two companion cases: *Robert W. Mauthe, M.D., P.C. v. National Imaging Associates, Inc.*, 767 F. App'x 246 (3d Cir. 2019) and *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F. 3d 129 (3d Cir. 2019). "[T]he TCPA only prohibits unsolicited *advertisements*, not any and all faxes even if sent for a commercial purpose." *Optum*, 925 F. 3d at 133. An unsolicited advertisement is defined under the TCPA as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). "[T]o violate the TCPA [the fax] must directly or indirectly inform the recipient that the sender of some other

entity sells something of value." *National Imaging*, 767 F. App'x 246 at 249. As the Third Circuit explained:

> [T]he fax either must (1) notify a potential buyer that he or she can purchase a product, goods, or services from the sending entity or perhaps another seller or (2) induce or direct a willing buyer to seek further information through a phone number, an email address, a website, or equivalent method for purposes of making a purchase."

*Id.* "Thus, the fax must convey the impression to its recipient that a seller is trying to make a sale to him." *Id.*

The first alleged fax advertises a system offered by Advanced Data Systems Corporation and invites the recipient to contact the seller for more information. (SAC, Ex. A at 2-3). Defendants do not dispute that this is an advertisement, but instead dispute that it is a fax because it does not contain a fax header. However, for the purposes of this motion to dismiss, it is plausible to infer that it is a fax. Such an allegation is not, contrary to Defendants' assertion, conclusory. It is a simple factual allegation—the document is a fax.

The next fax offers the recipient an opportunity to win a free iPad mini by watching a live demo of an ADS product. (*Id.* at 4). It also lists a number of products and encourages the recipient to "[s]ee why over 30,000 of your colleagues rely on systems from ADS every day." (*Id.*). Finally, it directs the recipient to a phone number it can call for additional information. (*Id.*). Defendants argue that an invitation to watch a demo in order to win an iPad is not an advertisement. That may be true if that were all the fax contained, but it also describes products by ADS. Defendants' argument is essentially that these are hardly effective advertisements since they do not describe products with precision, and that the Defendants are not fully identified, since the faxes only refer to "ADS." But Defendants cite to no precedent that requires an advertisement to be effective. If not plain from the face of the fax, it is at least a reasonable inference that the sender was trying to

induce the recipient to seek further information through the provided phone number to make a purchase, which fits within the parameters of the *Mauthe* cases.  It is likewise a reasonable inference that "ADS" refers to the Defendants.  The same reasoning applies to the next two faxes. (*Id.* at 6, 7).

Defendants then argue that two faxes which encourage the recipient to enter to win a gift card do not contain enough information to be advertisements.  (*Id.* at 8, 9, the "Gift Card Faxes"). Defendants note that neither of their names are identified on this fax.  But the *Mauthe* standard does not require an advertisement to feature the sender's name, only that it inform the recipient that the sender or some other entity sells something of value.  The Gift Card Faxes encourage the recipient to "[s]ee a free presentation of our award[-]winning medical software."  This is sufficient to "convey the impression to its recipient that a seller is trying to make a sale to him" as required by the *Mauthe* decisions.  The clear implication is that the sender wants to sell its "award-winning software" to the recipient.

The next fax also conveys the impression of a sale, describing a particular system and its attributes, as well as a pricing incentive. (*Id.* at 10).  Defendants argue that the product and seller need to be described with greater specificity to be actionable.  They further argue that since it is facially ambiguous as to whether it is an advertisement, it would be improper to extrapolate that this is an advertisement from the recipient's outside knowledge of the industry and products.  (Def. Brf. at 20).  However, their reliance on *National Imaging* is misplaced, because the fax in that case was merely a satisfaction survey from a company the recipient knew to be a seller of medical products.  *National Imaging*, 767 F. App'x at 248.  The Third Circuit refused to allow the recipient's knowledge that the sender does sell products and services inform its interpretation of

15

an otherwise innocuous fax. *Id.* at 249. Here, the fax is facially an advertisement and expressly encourages the recipient to seek further information regarding the product that it describes.

The final fax also advertises a product from the sender. It invites the recipient to "watch one of our EMR Demos And be enter to WIN!" before describing a prize in detail. (SAC, Ex. A at 11). This communication induces the recipient to seek further information for the purpose of making a purchase, which again is sufficient under the *Mauthe* cases.[8] It informs the recipient that the sender sells something of value ("our EMR") and entices the recipient to watch a demonstration of the product. Other courts have, at least on occasion, determined that purely informational faxes describing certain products are not advertisements. *See, e.g.*, *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F. 3d 218, 222 (6th Cir. 2015) (determining that a fax was not an advertisement because no record evidence showed it was sent with the intention of making a profit and because the sender did not sell the drug described in the fax). However, having informational content does not conclusively prevent a fax from being classified as an advertisement. *See, e.g.*, *Ira Holtzman, C.P.A. v. Turza*, 728 F. 3d 682, 688 (7th Cir. 2013) (classifying a fax formatted as a newsletter as an advertisement because "the plug for [the sender's] services was not incidental to a message that would have been sent anyway; promotion or marketing was the reason the faxes were transmitted."). Here, it is reasonable to infer that that the purpose of this fax was to promote the sender's commercially available product. If not to promote

---

[8] In support of this inducement theory, the Third Circuit cited to *Chesbro v. Best Buy Stores, L.P.*, 705 F. 3d 913, 918 (9th Cir. 2012). In that case, the Ninth Circuit analyzed an automated phone call in which the message did not explicitly reference any goods or services. *Id.* But, "approach[ing] the problem with a measure of common sense[,]" the court noted that by urging the listener to redeem reward points that could only be redeemed by shopping at the sender's store, the "calls encouraged the listener to make future purchases [from the sender]." *Id.* Here, not only does the fax encourage the recipient to further engage with the sender, it expressly references one of the sender's products.

its EMR product, then why was it sent? It is therefore plausible that this fax was intended to induce the recipient to make a purchase and is accordingly an actionable unsolicited advertisement under the TCPA.

Plaintiff has stated a claim that the faxes attached to its second amended complaint are advertisements as defined by the TCPA.

### 2. Count Two - New Jersey Junk Fax Act

The New Jersey Junk Fax Act ("NJJFA") prohibits "a person within this State [from using] any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine *within this State*." N.J.S.A. § 56:8-158(a) (emphasis added). NJJFA violations, therefore, require an allegation that the fax was received in New Jersey. Plaintiff has not made such an allegation. It argues only that since it seeks to represent a class all persons who received faxes from the Defendants, some of those putative class members "likely received these faxes in New Jersey and may, therefore, be entitled to additional remedies under New Jersey law." (Pl. Opp. at 14). This allegation is speculative and insufficient. *See Horizon*, 846 F. 3d at 634 ("Named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Accordingly, Plaintiff has failed to sufficiently state a claim under the NJJFA and Count Two is dismissed.

### 3. Count Three - New Jersey Consumer Fraud Act

Plaintiff's claim under the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.* is premised on the Defendants' violation of the NJJFA. Violations of the NJJFA also constitute violations of the CFA. N.J.S.A. 56:8-160. Because Plaintiff has not adequately stated

a claim for violation of the NJJFA, it has also not stated a claim for violation of the CFA. Accordingly, Count Three is dismissed.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (D.E. 82) is **GRANTED** as to Counts Two and Three and otherwise **DENIED**. Counts Two and Three are **DISMISSED**. The dismissal is without prejudice and Plaintiff is granted leave to file a Third Amended Complaint. Plaintiff has thirty (30) days to file a Third Amended Complaint, if it so chooses, consistent with this Opinion. If Plaintiff fails to file a Third Amended Complaint, the dismissal of Counts Two and Three will be with prejudice. An appropriate Order accompanies this Opinion.

Dated: May 27, 2020.

_____
John Michael Vazquez, U.S.D.J.